**STATE OF WEST VIRGINIA**

*In re* **B.P., B.S.-1, and B.S.-2**

**No. 19-0419** (Kanawha County 18-JA-172, 18-JA-173, 18-JA-174)

**FILED**

**November 8, 2019**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother T.S., by counsel Peggy L. Collins, appeals the Circuit Court of Kanawha County's March 26, 2019, and April 9, 2019, orders terminating her parental rights to B.P., B.S.-1, and B.S.-2 and denying her post-termination visitation, respectively.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Brandolyn N. Felton-Ernest, filed a response in support of the circuit court's orders. The guardian ad litem ("guardian"), Sharon K. Childers, filed a response on behalf of the children also in support of the circuit court's orders and a supplemental appendix. On appeal, petitioner argues that the circuit court erred in denying her request for a post-dispositional improvement period, terminating her parental rights, and denying her post-termination visitation with the children.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In April of 2018, the DHHR filed a child abuse and neglect petition against petitioner. Specifically, the DHHR alleged that petitioner abused drugs, which affected her ability to parent the children. Referrals indicated that petitioner had been observed abusing drugs in the parking lot of a shopping center. Further, a video showed petitioner "shooting up" heroin with a syringe while the two youngest children were in the room with her. Needles and bleach were also in their reach. Upon speaking with a Child Protective Services ("CPS") worker, petitioner denied abusing drugs, but stated she could pass a drug screen "in a few days." The DHHR also alleged that petitioner

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990). Additionally, because two of the children share the same initials, we will refer to them as B.S.-1 and B.S.-2 throughout this memorandum decision.

1

neglected the children by failing to adequately feed them and by failing to change B.S.-1's diaper for so long that a fungal infection and a boil developed in her diaper area. Doctors had to lance the child's boil and treat her with antibiotics. Petitioner initially challenged the petition, but eventually waived her preliminary hearing.

The circuit court held an adjudicatory hearing in May of 2018. Petitioner stipulated that she had a substance abuse problem that affected her ability to adequately parent her children. The circuit court accepted petitioner's stipulation, adjudicated her as an abusing parent, and granted her a post-adjudicatory improvement period. As part of the terms and conditions of the post-adjudicatory improvement period, petitioner was required to complete a drug treatment program, submit to random drug screens, participate in supervised visitation, and attend parenting and adult life skills classes.

At a review hearing held in July of 2018, the circuit court was advised that petitioner checked herself out of her treatment program against medical advice. The guardian requested that the circuit court terminate petitioner's improvement period but, because petitioner planned to enter another treatment program, the circuit court denied the request and continued her improvement period. However, petitioner was prohibited from having contact with B.S.-2, who was twelve years old, due to issues the two were having during visitation. A second review hearing was held in September of 2018. As of that hearing, petitioner had not entered another treatment program and was having issues with supervised visitation, such as falling asleep during visits and not fully engaging with the children. Despite her lack of compliance, the circuit continued petitioner's improvement period. At a final review hearing held in November of 2018, the circuit court was advised that petitioner continued to be noncompliant with services and had recently tested positive for methamphetamine. While petitioner was permitted to continue with services, the circuit court scheduled the dispositional hearing.

The circuit court held the dispositional hearing in January of 2019. The DHHR presented the testimony of a caseworker regarding petitioner's noncompliance with her improvement period. According to the caseworker, petitioner only sporadically submitted to drug screens and tested positive for methamphetamine in September of 2018. The caseworker testified that petitioner started multiple treatment programs, but failed to follow through with treatment and left the programs early. Further, the caseworker stated that petitioner failed to accept responsibility for her actions or meaningfully acknowledge her substance abuse. While the caseworker conceded that petitioner had been attentive to the children during supervised visitation, she noted that petitioner failed to implement any of the parenting skills taught to her through parenting classes. Petitioner appeared overly tired at visits and failed to check on the children if they were out of her sight. Petitioner also had to be reminded to stay off her cell phone during the visits.

Petitioner testified that she completed a detoxification program around March or April of 2018, and then entered a twenty-eight-day treatment program, which she completed. Petitioner admitted that she entered another program after that, which she left prematurely. Petitioner then attempted to enter a program administered by Prestera, but ultimately entered a different six-week program, which she completed. Petitioner testified that she accepted responsibility for her actions and became "head strong" during the proceedings, refusing to screen. Petitioner also admitted that she did not have stable housing and had not had consistent contact with the DHHR. However,

petitioner stated that she did not "believe that a whole lot of effort was put into my case" and that she did not "believe that [she] was given some opportunities that could have possibly been [provided to her by] another worker." Petitioner further explained that she did not "intentionally" abuse methamphetamine when she tested positive for the substance in September of 2018. Rather, petitioner claimed that she was "sabotaged" and that the substance must have been put in her food or drink. After hearing evidence, the circuit court continued the matter to facilitate phone contact between B.S.-2 and petitioner to determine whether continued contact would be in the child's best interest.

At a hearing held in March of 2019, the circuit court heard evidence that petitioner had entered another twenty-eight-day treatment program and two sober-living facilities since the last hearing. Further, despite only having a few weeks to engage in phone calls with B.S.-2, petitioner missed a phone call with the child. Following the hearing, the circuit court entered an order terminating petitioner's parental rights based upon findings that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future because she had not successfully responded to rehabilitative services or rectified the circumstances that led to the filing of the petition. The circuit court also determined that termination of petitioner's parental rights was in the children's best interest. In a subsequent order, the circuit court denied petitioner post-termination visitation with the children. It is from the March 26, 2019, and April 9, 2019, orders that petitioner appeals.[2]

The Court has previously established the following standard of review in cases such as this:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in denying her motion for a post-dispositional improvement period. According to petitioner, she successfully completed several short-term rehabilitation programs, was compliant with her parenting and adult life skills classes, and "participated in what was essentially joint counseling with her oldest daughter." Petitioner

---

[2]The children were placed in the care of their nonabusing fathers and the permanency plan for the children is to remain in their care.

avers that this demonstrated a substantial change of circumstances and that she was likely to participate in an improvement period. We disagree.

The decision to grant or deny an improvement period rests in the sound discretion of the circuit court. *See In re M.M.*, 236 W. Va. 108, 115, 778 S.E.2d 338, 345 (2015) ("West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period."); Syl. Pt. 6, in part, *In re Katie S.*, 198 W. Va. 79, 479 S.E.2d 589 (1996) ("It is within the court's discretion to grant an improvement period within the applicable statutory requirements . . . ."). Pursuant to West Virginia Code § 49-4-610(3)(D), a circuit court may grant a post-dispositional improvement period when,

> [s]ince the initiation of the proceeding, the [parent] has not previously been granted any improvement period or the [parent] demonstrates that since the initial improvement period, the [parent] has experienced a substantial change in circumstances. Further, the [parent] shall demonstrate that due to that change in circumstances, the [parent] is likely to fully participate in the improvement period.

Here, petitioner was granted a six-month post-adjudicatory improvement period. Therefore, she was required to demonstrate a substantial change in circumstances in addition to her likelihood of fully participating in an improvement period in order to be granted a post-dispositional improvement period. However, petitioner failed to demonstrate either of these requirements. While it is true that petitioner entered several short-term rehabilitation programs, petitioner left at least one program early against medical advice and tested positive for methamphetamine in September of 2018. Testimony showed that petitioner submitted to only a few drug screens and completely ceased screening after December 1, 2018. Moreover, petitioner failed to fully acknowledge the extent of her substance abuse, testifying that she tested positive for methamphetamine because she was "sabotaged" and that it must have been put in her drink. We have previously held that

> [i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (quoting *In re Charity H.*, 215 W. Va. 208, 217, 599 S.E.2d 631, 640 (2004)). Given petitioner's failure to meaningfully address her substance abuse, submit to random drug screens, or acknowledge the extent of her substance abuse, we find no error in the circuit court's decision to deny petitioner's motion for a post-dispositional improvement period as it would have been an exercise in futility at the children's expense.

Petitioner also argues that the circuit court erred in terminating her parental rights when she made substantial progress in her improvement period. Petitioner asserts that she attempted and completed several treatment programs and did not test positive for drugs after September of 2018. Further, she worked at several places of employment throughout the proceedings. According to

4

petitioner, she was "strenuously working [on] maintaining her sobriety" and termination of her parental rights was an extreme measure. We find no merit in petitioner's arguments.

West Virginia Code § 49-4-604(b)(6) provides that circuit courts are to terminate parental rights upon findings that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the children's welfare. West Virginia Code § 49-4-604(c)(3) provides that a situation in which there is "[n]o reasonable likelihood that [the] conditions of neglect or abuse can be substantially corrected" includes when

> [t]he abusing parent . . . ha[s] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health, or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare, or life of the child.

The record establishes that petitioner failed to respond to or follow through with rehabilitative efforts designed to reduce or prevent the abuse and neglect of the children. During the underlying proceedings, petitioner attended program after program without adequately addressing her substance abuse. While petitioner relies on the large number of treatment programs she attended in support of her argument, she ultimately failed to meaningfully address her issues with substance abuse. Petitioner tested positive for methamphetamine in September of 2018, which she denied and claimed was an effort to sabotage her. Further, although petitioner touts the fact that she did not test positive for drugs after September of 2018, petitioner refused to submit to drug screens, submitting to only three or four screens in the months leading up to the dispositional hearing. While petitioner argues that she was working to address her issues with drug abuse and should have been granted a less-restrictive alternative to termination of her parental rights, we have previously held that "[c]ourts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened." *Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, syl. pt. 4 (citing syl. pt. 1, in part, *In re R.J.M.*, 164 W. Va. 496, 266 S.E.2d 114 (1980)). Moreover,

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(c)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Given petitioner's failure to adequately acknowledge or address her issues with drug abuse, we agree with the circuit court's decision that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future and that termination was necessary for the welfare of the children. Therefore, we find no error in the circuit court's termination of petitioner's parental rights.

Lastly, petitioner argues that the circuit court erred in denying her post-termination visitation with the children. According to petitioner, she has a strong bond with the two younger children and was maintaining contact with her oldest child via phone calls monitored by the child's therapist. Petitioner avers that she was not a danger to her children and argues that the fathers could have allowed visitation at their discretion. Petitioner asserts that she was "much more sober and stable" than when the case began and believes the denial of post-termination visitation is not in the children's best interests. We find that petitioner is entitled to no relief in this regard.

> "When parental rights are terminated due to neglect or abuse, the circuit court may nevertheless in appropriate cases consider whether continued visitation or other contact with the abusing parent is in the best interest of the child. Among other things, the circuit court should consider whether a close emotional bond has been established between parent and child and the child's wishes, if he or she is of appropriate maturity to make such request. The evidence must indicate that such visitation or continued contact would not be detrimental to the child's well being and would be in the child's best interest." Syl. Pt. 5, *In re Christina L.*, 194 W.Va. 446, 460 S.E.2d 692 (1995).

Syl. Pt. 11, *In re Daniel D.*, 211 W. Va. 79, 562 S.E.2d 147 (2002).

The evidence demonstrates that post-termination visitation would not have been in the children's best interests. B.S.-2's therapist wrote a letter to the guardian, explaining that B.S.-2 was highly upset with petitioner and did not desire visitation with her. When asked whether she desired continued contact via phone calls, B.S.-2 responded "[t]here's no point in them because my mom always lies to me. I don't like them." Based upon the child's statements and her regressive behavior following contact, the therapist opined that post-termination visitation with petitioner would not serve B.S.-2's best interests. Further, the record does not support a finding that post-termination visitation would have been in the younger children's best interests. Court summaries indicate that petitioner fell asleep during the visits and did not fully engage with the children during that time. Accordingly, we find no error in the circuit court's decision to deny petitioner post-termination visitation with the children.

For these reasons, we find no error in the decision of the circuit court, and its March 26, 2019, and April 9, 2019, orders are hereby affirmed.

Affirmed.

**ISSUED**: November 8, 2019

**CONCURRED IN BY**:

Chief Justice Elizabeth D. Walker
Justice Margaret L. Workman
Justice Tim Armstead
Justice Evan H. Jenkins
Justice John A. Hutchison